## HARLAN v. SWEENY.

SURETIES. *Upon notes for purchase money.* Judgment having been rendered against the purchaser and his sureties on the first of four notes given for land at a chancery sale, the master was directed to issue execution, and, if the money could not be made, to re-sell the land, partly for cash and partly on six and twelve months time, to pay the judgment "and the notes not due," and the master did re-sell for less than the amount due from the purchaser, which sale was afterwards confirmed without objection. *Held,* that the sureties, whose lands had been levied on before the master's sale and sold shortly thereafter and before the confirmation, were not entitled, merely on the ground of suretyship, to have the proceeds of sale applied to the satisfaction of the judgment, and the sale under the execution set aside, by petition in the cause.

· FROM SUMNER.

Appeal from the Chancery Court at Gallatin. H. H. LURTON, Ch.

J. J. TURNER, for complainant.

WILSON & VERTREES for defendant.

COOPER, J., delivered the opinion of the court.

Under a decree in this cause, the clerk and master, on the 28th of February, 1874, sold a tract of land on a credit of six, twelve, eighteen, and twenty-four months, to W. J. Sweeny, who executed his four notes of that date as required, payable to the clerk and master, with Elizabeth A. Sweeny and E. Sweeny as his sureties, for $1,594.68 each, and the sale was confirmed.

On the 21st of December, 1874, by a decree, reciting the sale and the execution of the note, a judgment was rendered in favor of the clerk and master, for the use of the parties interested, on the first of these notes. The master was further directed to issue an execution on the judgment, and if the money cannot be made, then to re-sell the land, "to pay this decree and the notes not due," for $3,300 in cash, and the residue in six and twelve months, without the right of redemption. On the 14th of June, 1875, another decree was rendered, giving a judgment on the second note, and directing the master, unless this and the former judgment were paid by the October Rules, to re-sell the land for cash, without the right of redemption, and authorizing an execution to issue, "in the mean time," on the judgments, "to see if the same cannot be collected without a sale of the said land." On the 14th of July, 1875, executions were issued on both judgments. The execution on the last judgment was levied on land the property of E. Sweeny, and then held up by order of the plaintiff. The execution on the judgment of the 21st of December, 1874, was levied on the same land the property of E. Sweeny, and also on the dower interest of Elizabeth A. Sweeny in another tract of land. The levies were made on the 21st of August, 1875, and the lands were sold thereunder, on the 18th of November, 1875, to the attorney of the parties interested, who, on the same day, advanced his bids to $500 on one tract, and $550 on the other. The sheriff made him a deed on the 22d of the same month. On the 1st of No-

vember, 1875, the clerk and master, under, as he says, "the order of sale made at the June Term, 1875," re-sold the land on the terms of one-third cash, the residue in six and twelve months, the cash paid, and each note being, by a subsequent advance, the sum of $1,689.33⅓, in all $5,068. This amount, after allowing a credit of $500 paid on the first note in February, 1875, falls short of paying the original purchase money due from Sweeny by about $1,000. On the 22d of December, 1875, judgment was rendered on the third of the original notes. On the same day, the sureties of Sweeny filed a petition asking, on the foregoing facts, that the proceeds of the master's sale of the 1st of November, 1875, be applied to the payment of the judgments on the first two notes, and, if sufficient for their satisfaction, that the executions of July 14, 1875, be suspended, and the returns quashed. The Chancellor refused the relief sought, and the petitioner appealed.

The sale of the 1st of November, 1875, the clerk says, was made under the order of the June Term, 1875. It was not in conformity with the order either of that or the previous term. It is doubtful whether the decree of re-sale of the 21st of December, 1874, was strictly correct, and it is clear that the order of the subsequent term was erroneous, the court having no power to change the decree of the preceding term. The parties interested have, however, acquiesced in the re-sale, and as it may be sustained under the first decree, notwithstanding the clerk's recital, the modification in the cash payment being for the benefit of

Harlan *v.* Sweeny.

those parties, the sale must be treated as valid for the purposes of the application before us.   The judgments on the purchase notes are valid also, being in execution of the decree confirming the original sale, and not judgments by motion proper.   *Richards* v. *Williams*, 3 Baxt., 186.   And the decrees of the 21st of December, 1874, and 14th of June, 1875, never having been appealed from, are in other respects in full force.

The prayer of the petition of the sureties is, that the proceeds of the master's sale of the 1st of November, 1875, be applied to the payment of the judgments on the first two notes.   The order to re-sell the land was to pay the judgment then rendered "and the notes not due."   Whatever might have been the rights of the sureties if the decree had been to re-sell for the purpose of paying the judgment rendered, and whatever may have been their rights to have had the decree in that form, it is clear that, under the actual decree, they were not entitled to have the proceeds of the re-sale applied exclusively to the judgments as prayed.   Nor could they, in any court, have had a *pro rata* application of the time instalments to the satisfaction of the judgments in advance of the collection; for, that would have been to have put them in a better position than the creditor, through whom alone they could claim by subrogation, and to have given them credit for the whole amount of a debt certain to be reduced by the expenses of collection, and liable to be diminished by subsequent casualties. The most they could demand was, after the confirmation of the sale, to have one-fourth of the net cash

payment applied in so much satisfaction of each judgment, if the judgments were not previously collected as authorized by the decrees.

Ordinarily, a surety has no right to compel a creditor to exhaust liens and collaterals before proceeding against him. *Gilliam* v. *Esselman*, 5 Sneed, 86; *First National Bank* v. *Wood*, 7 N. Y., 405; *Watson* v. *Sutherland*, 1 Tenn. Ch., 208. He has sometimes, where the principal was insolvent, been permitted to come into equity in advance of actual payment. *Henry* v. *Compton*, 2 Head, 549; *Saylors* v. *Saylors*, 3 Heis., 532. But the creditor, who is actively seeking to enforce his demand, may proceed against the surety personally, and at the same time seek to subject the collateral to the satisfaction of his debt. *Booth* v. *Booth*, 2 Atk., 343; *Dunkley* v. *Van Buren*, 3 Johns. Ch., 330. And, in general, a surety is not entitled to subrogation until he pays the debt in full, the creditor, in the mean time, being left in control of the debt, and all the remedies for its collection. The reason is, that subrogation is the creature of equity, and will never be allowed to the prejudice of the creditor. 1 W. & T. Lead. Cas. in Eq., 152, (4th Am. ed.)

The sureties, by the petition under consideration, state no facts which take this case out of the general rule. It is not averred, nor does it appear that the principal is insolvent. No other fact is stated than that of suretyship to sustain the prayer for the particular relief sought. The reliance seems to have been, that the existence of the relation, as matter of law, entitled the petitioners to the special relief asked.

Harlan *v.* Sweeny.

But this view of the relative rights of the parties is not sustained by the general principles regulating the relations of creditor and surety, nor by the facts of the particular case.

It seems from the returns of the sheriff on the execution, under which the property of the sureties was sold, that on the day of sale and prior to the actual sale, the sheriff found and levied upon two pieces of realty, the property of W. J. Sweeny, the principal debtor. Upon this fact, the counsel of the petitioners has argued that it was the duty of the sheriff to have exhausted this property before proceeding to sell the lands of the sureties, and that the latter are entitled to have the sale set aside, at any rate as against the persons for whose benefit it was bought, who are also the persons beneficially interested in the proceeds of the sale. But the petition, upon which the claim of petitioners to active relief can alone rest, asks no such relief, nor does it appear that the court below was called to act, or did act upon that view of the sureties' rights.

The decree of the Chancellor appealed from will be affirmed with costs, and the cause remanded to the Chancery Court.