A. T. GAMBLE v. JOHN WILSON ET AL.

[FILED OCTOBER 21, 1891.]

1. **Negotiable Instruments:** TRANSFER CARRIES SECURITY. The transfer of a promissory note by indorsement operates as an assignment or transfer of a bill of sale given to secure its payment, and the owner of the note, in a proper case, may bring replevin in his own name to recover possession of the property covered by the bill of sale.

2. **Instructions:** ERROR WITHOUT PREJUDICE. A judgment will not be reversed for error committed in refusing an instruction, unless such error was prejudicial to the party complaining.

3. **Replevin:** PROPERTY IN HANDS OF SHERIFF: DAMAGES. Where property is replevied from a sheriff holding it under an attachment, the measure of the officer's damages, in case of a verdict in his favor, is the amount due on the writ with interest and costs, if the value of the property is equal to or greater than the amount of the writ.

4. ———: ———: PROOF OF VALUE. When, in an action of replevin, the plaintiff admits on the record the value of the defendants' possession, it will not be necessary to prove the general

value of the property, as it will be presumed that such value is equal to or exceeds the amount admitted by the plaintiff as the value of the defendants' special interest.

5. ———: ———: RIGHT OF POSSESSION: BURDEN OF PROOF. An attachment on a claim before due can only issue in the exceptional cases mentioned in the statute, and where property is replevied from a sheriff holding it under a writ of attachment issued on a debt not due, it devolves upon the officer to prove that the jurisdictional steps preceding the issuing of the writ have been taken, in order to have the amount of such claim included in the assessment of his damages.

ERROR to the district court for Buffalo county. Tried below before CHURCH, J.

*Calkins & Pratt,* for plaintiff in error, cited, as to the effect of the transfer: Jones, Chat. Mortgages, sec. 503; *Ramsdell v. Tewksbury,* 73 Me., 197; *Crain v. Pain,* 4 Cush. [Mass.], 483. As to measure of damages: *Kerr v. Drew,* 90 Mo., 147, and cases; *Booth v. Ableman,* 20 Wis., 21; *Seaman v. Luce,* 23 Barb. [N. Y.], 240; *McNorton v. Akers,* 24 Ia., 370.

*Connor & Woodruff,* contra, cited: *Mundy v. Whittemore,* 15 Neb., 649.

NORVAL, J.

One F. Morningstar, who was conducting a banking business under the name of the Farmers & Merchants Bank, at Sartoria, in Buffalo county, borrowed of A. T. Gamble, plaintiff in error, the sum of $1,700 on the 17th day of December, 1887, and executed and delivered his promissory note for that amount, and secured the same by a bill of sale in writing of the property in controversy, consisting of a frame bank building, lumber office, fire and burglar proof safe, bank counter and fixtures. At some date between the 11th and 13th days of March, 1888, Morningstar disappeared, leaving one Taggart in posses-

sion of the premises, where he remained until between 10 o'clock and noon on the 14th, when Mr. Taggart shut up the building and went to Kearney, where the plaintiff resided, and, it is alleged, delivered to his agent the keys of the building and combination of the safe.

On the 15th day of March defendant Bannon procured an attachment to be issued out of the county court against the property of the Farmers & Merchants Bank of Sartoria, by virtue of which the defendant Wilson, as sheriff, on the 15th day of March, 188×, at 10 o'clock P. M., levied upon the safe and office furniture, being a part of the property mentioned in the said bill of sale, finding no one in visible possession. The plaintiff, claiming the property by virtue of the bill of sale and delivery of the key and the combination of the safe, brought the action of replevin in the court below and the property was accordingly taken and delivered to him.

The attachment was upon certificates of deposit, amounting altogether to the sum of $249.10, only $134 of which was due at the time of commencing said action. No proof was made of the value of the property taken, but it was admitted that the value of defendants' possession, if they were entitled as a matter of law to include the amount of the certificate of deposit which was not due at commencement of action, was $249.10, but if the defendants were not entitled as a matter of law to include the amount of the certificate not due, then the value of the possession, should they be entitled to recover, was the sum of $134. It also appears that the note which the bill of sale was given to secure had, before the commencement of the suit, been transferred to the Buffalo County National Bank, and that the plaintiff was not the owner of the note, but the bill of sale was not assigned.

The jury found the right of possession in defendants and that the value of their possession was $249.10.

Complaint is made in the brief of counsel for plaintiff

in error to the giving to the jury the defendants' request
No. 3.   By it the court charged the jury, in effect, that if
they found that prior to the bringing of the suit the plaint-
iff had transferred all his interest in the note, for which
the bill of sale was given as security, to the Buffalo County
National Bank, and that the bank was, at the commence-
ment of the action, the owner of the same, then the plaint-
iff could not recover.   The charge of the court was not
only correct as an abstract proposition of law, but it was
applicable in the case made by the evidence.   It was un-
disputed that prior to the bringing of the suit the plaintiff
transferred the note, which was secured by bill of sale, to
the Buffalo County National Bank.   The indorsement of
the note was an assignment to the bank of the bill of sale
and all of the plaintiff's interest therein.   The bank could
have maintained replevin of the property in its own name
and was the real party in interest. (Herman on Chattel
Mortgages, 415; *Mundy v. Whittemore,* 15 Neb., 647; *Stude-
baker Mfg. Co. v. McCargur,* 20 Id., 500; *Harman v. Bar-
hydt,* Id., 625.)

But it was urged that as the property had been taken
under the writ of replevin and delivered to the plaintiff,
the court, in case a verdict was returned for the defendants,
should render a judgment against the plaintiff for the value
of the special interest, and it could not determine the con-
troversy without prejudice to the rights of the bank, and
therefore the court should have made the bank a party in-
stead of instructing the jury to find for the defendants in
case they found that the note had been transferred by the
plaintiff.   No doubt the bank had the right, under sections
47 and 50a of the Code, to intervene and assert its inter-
est in the property in litigation, but it made no application
of that kind.   So, under section 46 of the Code, the court
could have ordered the bank brought in, but we are unable
to perceive upon what principle the plaintiff can be heard
to complain that the rights and interest of the bank were

not protected. A party *cannot* bring a suit, and after the case is decided against him, complain because the court did not of its own motion, before judgment, bring in some other party, who, under the evidence, might have maintained the action, to champion the plaintiff's failing cause.

It is claimed that the court erred in refusing the plaintiff's second request, which was: "The property claimed by defendant in this action is the safe and bank furniture, and if you find that the parties theretofore in possession of such safe and fixtures abandoned the same and delivered the key of the room in which such furniture was, together with the combination of such safe, to the plaintiff on the 14th day of March, 1888, such fact would constitute a sufficient taking of possession by plaintiff." The bill of sale had not been placed upon record at the time the attachment was levied. The theory of the plaintiff was that he had taken possession of the property before it was attached. The safe and furniture were left by Morningstar in the bank building in charge of one Taggart, who, on the 14th day of March, delivered a key to the building and the combination of the safe to Ross Gamble, the agent of the plaintiff. No one was in visible possession of the building, or property therein, when the sheriff levied the attachment. The bill of sale also covered the bank building. In view of this fact, and the nature of the property, we are of the opinion that the delivery of the key of the building and the combination of the safe constituted a delivery of possession to the plaintiff.

While the request states the proposition of law correctly, the refusal to give it to the jury was error without prejudice, for, as we have already seen, the plaintiff having transferred the bill of sale to the bank he had no such interest in the property as would authorize him to maintain replevin therefor. A judgment will not be reversed for refusing an instruction, unless such refusal was prejudicial to the rights of the complaining party.

It is finally claimed that there was no evidence to sustain the finding of the jury as to the value of the defendants' possession. Where property is replevied from a sheriff holding it by virtue of a levy under an execution or attachment, the measure of the officer's damages, in case of a verdict in his favor, is, within the value of the property, the amount due upon the writ, with interest and costs. (*Kersenbrock v. Martin,* 12 Neb., 374; *Welton v. Beltezore,* 17 Id., 399; *Cruts v. Wray,* 19 Id., 581.)

Ordinarily it is incumbent upon the officer to prove the value of the property; but when the plaintiff admits on the record the value of the defendants' possession, and no evidence is given as to the general value of the property, it will be presumed that such value is equal to or exceeds the amount admitted by the plaintiff as the value of the defendants' special interest. We are of the opinion that the defendants were not entitled to have included in the assessment of their damages, the amount of their certificate of deposit, which was not due at the commencement of the attachment proceedings.

Section 237 of the Code authorizes a creditor to maintain an action on a claim before it is due, and have an attachment against a debtor's property, on certain grounds specified in the section.

Section 238 requires that before the action shall be brought or the attachment granted, that "the plaintiff, his agent or attorney, shall make an oath in writing, showing the nature and amount of the plaintiff's claim, that it is just, when the same shall become due, and the existence of some one of the grounds for attachment enumerated in the preceding section."

Section 241 provides that before the order of attachment shall be issued, a plaintiff must enter into an undertaking, as directed by section 200.

The record fails to show that the affidavit and bond were filed. As an attachment on a claim before due can only

issue in the exceptional cases mentioned in the statute, it devolved upon the defendants to prove that the require-. ments of the law were complied with in order to have included the amount of the certificate of deposit, which was not due when the attachment was issued. To the amount of such certificate the damages were excessive.

Unless the defendants file with the clerk of this court within thirty days a remittitur of all the damages excepting $134, as of the date of the judgment in the court below, the judgment will be reversed and remanded, but in case such a remittitur is filed, the judgment will stand

AFFIRMED.

THE other judges concur.