## GIBBS v. TALLY et al.*

## L. A. No. 746; December 22, 1900.

### 63 Pac. 168.

**Mechanic's Lien—Bond.**—Under Code of Civil Procedure, section 1203, requiring a bond, in case of a building contract, it by its terms to inure to the benefit of persons performing labor and furnishing materials for the contractor, one given to "T. [the owner], legal representatives or assignees," and not in terms inuring to the benefit of anyone else, is insufficient.

**Mechanic's Lien—Failure to Take Bond.**—Under Code of Civil Procedure, section 1203, requiring a bond, in case of a building contract, in an amount equal to at least twenty-five per cent of the contract price, inuring to the benefit of persons performing labor and furnishing materials for the contractor, and providing as limit of damages, in case of a bond, the value of labor and materials furnished, not exceeding the amount of the bond, and declaring that any failure to comply with the provisions of the section shall render the owner and contractor liable to materialmen and laborers entitled to liens on the property, the measure of damages, in the absence of a bond, is the amount of the claim for labor or material, not exceeding twenty-five per cent of the contract price.

**Mechanic's Lien—Failure to Take Bond.**—Under Code of Civil Procedure, section 1203, giving action for damages "to any and all materialmen, laborers and subcontractors entitled to a lien," if bond is not filed where there is a building contract, the claimant who sues first and obtains judgment is entitled to recover up to the limit of the owner's liability, unless other claimants intervene, or, having brought actions, have them consolidated with his.

**Mechanic's Lien—Failure to Take Bond.**—Though a materialman, suing the owner of a building for failure to have a bond of the contractor filed, alleges nonpayment of the claim for materials furnished, it is enough for him to prove the debt, and defendant has the burden of proving payment.

**Mechanic's Lien—Failure to Take Bond.**—Under Code of Civil Procedure, section 1203, giving action for damages to a laborer or materialman against the owner of the property who, in case of a contract to build thereon, does not take a bond for their benefit, and providing that action on the bond, if one is taken, shall not affect the laborer's lien nor any action to foreclose it, except that there shall be but one satisfaction of the claim, action for failure to

---

*For subsequent opinion in bank, see 133 Cal. 373, 60 L. R. A. 815, 65 Pac. 970.

take bond is not affected by the bringing of an action to foreclose the lien.[1]

Mechanic's Lien—Failure to Take Bond.—A claim under Code of Civil Procedure, section 1203, for damages by a laborer against the owner of property who, in case of contract to build thereon, does not take a bond from the contractor, is within Civil Code, section 1458, declaring "a right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such."

APPEAL from Superior Court, Los Angeles County; Waldo M. York, Judge.

Action by William H. Gibbs against Mary A. Tally and another. Judgment for plaintiff. Defendants appeal. Modified and affirmed.

Clarence A. Miller for appellants; T. M. Stewart for respondent.

CHIPMAN, C.—Action to recover damages from the owner of a building for failure to comply with section 1203 of the Code of Civil Procedure relating to liens of mechanics and others. Plaintiff had judgment, from which defendants appeal on the judgment-roll, including a short bill of exceptions.

1. Appellants challenge the constitutionality of the above section of the code. The question has been recently decided here adversely to appellants' contention: Carpenter v. Furrey, 128 Cal. 665, 61 Pac. 369.

2. Appellants contend that a sufficient bond was filed. A bond did in fact accompany the contract, and was filed with it. This bond was signed by the contractor, Parsons, and by two sureties, but it was given to the owner of the property being improved, "Mrs. Mary A. Tally, legal representatives or assigns," and was "not by its terms made to inure to the benefit of any and all persons who perform labor or furnish materials to the contractor, or any person acting for him or by his authority," as the statute requires. The bond was not such a one as the law prescribes, and was not available to anyone except the owner, to whom it was given, and the

---

[1] Cited and approved in Erickson v. Russ (N. D.), 129 N. W. 1026, in support of the statement: "Neither is the lien waived nor merged upon the obtaining of a judgment at law upon the debt. Until the lienor has realized upon said judgment or parted with the ownership thereof, it does not act to destroy his lien."

result, so far as any laborer or materialman is concerned, was the same as if no bond at all had been filed. Under section 1203, as it stood when first enacted (Stats. 1885, p. 147), the bond would have been available to laborers and materialmen as well as to the owner, but the section was repealed by act of March 15, 1887 (Stats. 1887, p. 152), and there was no provision of the code on the subject until the new section was enacted in 1893 as we now have it (Stats. 1893, p. 202). Plaintiff could not sue the sureties on this bond, for they are liable only so far as they are bound by the terms of the bond, and the bond does not make them liable to anyone but the owner, her representatives and assigns. It must follow that there was no such bond as is required by the code.

3. It is claimed that, if it be conceded that the bond does not comply with the statute, the action cannot be maintained because of the uncertainty as to what is the measure of damages in such a case. When a bond is filed, the section provides that "any person shall have an action to recover upon said bond, against the principal and sureties, or either of them, for the value of such labor or materials, or both, not exceeding the amount of the bond," etc. After providing as to filing a bond and its terms, etc., the statute reads as follows: "Any failure to comply with the provisions of this section shall render the owner and contractor jointly and severally liable in damages to any and all materialmen, laborers and subcontractors entitled to liens upon the property affected by said contract."

The statute is plain enough as to the limit of damages where a bond is filed, but is not so plain where it is not filed. It is manifest, however, that the legislature intended that some damages should be recoverable, and the only question is, How much? It would seem reasonable that the damages should not exceed what would be allowed on the bond if filed, namely, twenty-five per cent of the contract price, and to this extent, at least, we think the section will sustain the action. The judgment was less than twenty-five per cent of the contract price. But appellants claim that it appeared from the findings that there were unpaid claims other than those set forth in plaintiff's complaint, and that it was error to give judgment for plaintiff without prorating with the other claimants. The statute gives the action "to any and

all materialmen, laborers and subcontractors entitled to liens." Plaintiff was not bound to bring the action for the benefit of all unpaid claimants. The right of action is several, and the claimant who first sues and obtains judgment is entitled to recover up to the limit of the owner's liability. Possibly other unpaid claimants might intervene and ask to share in the recovery, where the unpaid claims exceed the amount for which the owner is liable. Possibly, too, where several different actions have been begun against the owner under section 1203, these actions might be consolidated in order to give to each claimant his proportionate share of the amount for which the owner is liable. But in the absence of any such situation, brought about by other unpaid lienholders, we see no reason why plaintiff should suffer any diminution of his judgment.

4. Finding 8 is to the effect that Parsons, the contractor, has not paid any part of the judgments mentioned in the complaint, nor any of the claims sued on, and that no part of either of said claims has been paid. Appellants challenge this finding as unsupported by the evidence. Plaintiff sues as assignee of seven different claims of as many different claimants, whose liens had been foreclosed and had gone to judgment, and also on a claim personal to himself, which had also gone to judgment. As to each of these claims plaintiff alleged that the contractor, Parsons, "has not, nor has any other person, paid any part of said judgment," except a certain sum stated in the complaint in each instance. The answer denies nonpayment, and alleges payment in full of each and all said claims. The only evidence of nonpayment was the testimony of Parsons, the contractor, who testified that he had not paid any of the claims, and that he had no property out of which payment could have been made, and that he cannot now pay any of the claims. Appellants contend that the burden of proof was on plaintiff to prove nonpayment. Even if that were the law, as has been intimated in a few cases, a sufficient prima facie case of nonpayment was shown. But in Melone v. Ruffino, 129 Cal. 514, 79 Am. St. Rep. 127, 63 Pac. 93, this court reviewed the authorities in this state on the subject, and showed that the rule here is the same as at common law, and that, "where a plaintiff has proved the existence of a debt—at least, within the period of statutory limitation—the burden of proving payment is

on the defendant''; and that, although an averment of non-payment is necessary to make the complaint perfect, yet ''a negative allegation is to be proved only when it constitutes a part of the original substantive cause of action upon which the plaintiff relies''—as in cases, for instance, of malicious prosecution, and where the cause of action is the alleged failure of the defendant to do work in a workmanlike manner.

5. Appellants contend that the several claims set out in the complaint were merged in the judgment against the contractor, Parsons, in the suit for the foreclosure of the liens, and that, the lienholders having elected to obtain and accept judgment against him for their claims, they are bound by their election. The pursuit of the remedy of foreclosure given by the statute, in which a money judgment may be taken against the contractor, and a judgment of foreclosure against the owner, will not operate as an extinguishment by merger of the remedy or right of action given under section 1203. It is expressly provided in the section that the action on the bond referred to ''shall not affect his [the laborer's] lien nor any action to foreclose the same, except that there shall be but one satisfaction of his claim,'' etc. We think the converse would be true, that the action for a failure to comply with the section is not affected by bringing the action to foreclose.

6. The judgment includes five assigned claims which were embraced in the foreclosure suit, and it is now contended that they are not assignable, and should not have been included in the judgment. Section 1203, supra, creates an obligation to enforce which is the purpose of this action. It is such an obligation as is assignable under section 954 of the Civil Code. ''A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such'': Civ. Code, sec. 1458.

7. Among the claims on which plaintiff sued as assignee was that of one Ware, a subcontractor, for $182.65; and another of the Los Angeles Lime Company, for $30.50, for supplies furnished to said Ware as subcontractor. Plaintiff failed to prove an assignment of the lime company's claim. It appeared that the lime company furnished the material constituting its claim to Ware, and his claim when assigned to plaintiff, and as it figured in the judgment in this action, included the lime company's claim. It is true, as contended

40

by plaintiff, that Ware's claim as subcontractor is distinct from the lime company's claim as a materialman, and under some circumstances Ware's claim might be considered independent of the lime company's claim, and judgment be given for it, while defendants would still be liable to the lime company, and thus might possibly be made to pay the same claim twice should the limit of their liability not be otherwise reached. But here plaintiff shows that Ware's claim is made up in part of the lime company's claim, and the complaint alleges, although not sustained by the proof, that the lime company had assigned its claim to plaintiff. It was admitted at the trial that any payments made to the lime company should be credited upon the claim of Ware. It seems to us, in view of the pleadings and the admissions, defendants should not be subjected to the possibility of being called upon twice to pay the lime company claim. Plaintiff concedes that if it is included in the Ware claim this may happen. In view of all the facts, it seems to us more consonant with justice, as well as in keeping also with the theory on which plaintiff brought action, to disallow this item, and reduce his judgment accordingly. The total judgment, including the lime company claim, is for $442.75. The judgment should be modified by reducing it $30.50, and as thus reduced should be affirmed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is modified by reducing it $30.50, and as thus reduced is affirmed.